Jorge J. GONZALEZ, Petitioner, Appellant,

v.

The JUSTICES OF the MUNICIPAL COURT OF BOSTON et al., Respondents, Appellees.

No. 03–2732.

United States Court of Appeals, First Circuit.

Heard June 8, 2004.

Decided Aug. 19, 2004.

Robert W. Hagopian, with whom James G. Pepe, Jr. was on brief, for appellant.

Cathryn A. Neaves, Assistant Attorney General, Commonwealth of Massachusetts, with whom Thomas F. Reilly, Attorney General, was on brief, for appellees.

Before SELYA, Circuit Judge, PORFILIO,* Senior Circuit Judge, and LYNCH, Circuit Judge.

SELYA, Circuit Judge.

Petitioner-appellant Jorge J. Gonzalez presently awaits trial in the Boston Municipal Court (the BMC) on state drug distribution charges. Gonzalez claims that this pending state prosecution places him twice in jeopardy for the same offense. On that basis, he seeks federal habeas relief. The district court dismissed his application, and he now appeals.

This is not the usual post-conviction habeas proceeding. Consequently, we must address a series of related questions, some of apparent first impression, about the nature of the habeas proceeding, its statutory underpinnings, and the applicable standard of review. Once those issues are resolved, our attention shifts to the merits of the petitioner's double jeopardy claim. Here too the circumstances are out of the ordinary: the case turns on whether a disposition labeled by the state trial judge as an acquittal should be regarded as such for purposes of the Double Jeopardy Clause despite having been characterized by the state supreme court as resulting from a "sham trial." Although the question is close, we answer it in the negative and, accordingly, affirm the district court's refusal to grant a writ of habeas corpus.

## I. THE TRAVEL OF THE CASE

More than four years ago, the Commonwealth of Massachusetts charged the petitioner with (i) distribution of a Class A controlled substance (heroin) and (ii) trafficking in that substance within 1,000 feet of a school. See Mass. Gen. Laws ch. 94C, §§ 32, 32J. On May 1, 2000, a justice of the BMC held a pretrial conference, during which the Commonwealth agreed to provide the petitioner with evidence concerning drug analysis and school distance measurements.[1] Because the petitioner was on probation at the time of his arrest, the state judge scheduled both a probation

---

* Of the Tenth Circuit, sitting by designation.

1. There is some disagreement as to the deadline for disclosure. The pretrial conference report—signed by both parties—specifies a compliance date of May 22, 2000, but the word "unagreed" is handwritten next to that date. This uncertainty need not be definitively resolved as the precise disclosure date is not crucial to our analysis.

surrender hearing and a trial on the merits for June 8, 2000.

On the morning of June 8, both sides reported that they were ready for trial. The probation surrender hearing ensued. After receiving into evidence drug analysis certificates and police testimony detailing the circumstances of the petitioner's arrest, the presiding judge determined that the Commonwealth had failed to prove a violation of the terms of the petitioner's probation.

The parties returned for the merits trial that afternoon. Before the trial began, the petitioner filed a motion in limine seeking the exclusion of all evidence concerning drug analysis and school distance measurements. He predicated this motion on the ground that the prosecution had not disclosed this evidence to the defense in a timely manner (i.e., as per the disclosure deadline fixed at the pretrial conference). The prosecutor offered to furnish the relevant data immediately. The judge responded that this offer was "not good enough" and granted the motion in limine.

This ruling effectively gutted the Commonwealth's case. In light of it, the prosecutor informed the court that she was no longer ready for trial. The judge announced that the case would nonetheless proceed as scheduled. *See Commonwealth v. Super*, 431 Mass. 492, 727 N.E.2d 1175, 1181 (2000) (concluding "that there is no requirement that the prosecution answer ready for trial as a condition precedent to commencing a criminal trial"). The prose-

cutor could have nol-prossed the case or attempted to file an interlocutory appeal,[2] but she took neither of these steps.

The petitioner waived his right to a jury trial, and the judge instructed the prosecutor to call her first witness. The prosecutor demurred, again explaining that she could not go forward because of the court's allowance of the motion in limine. Defense counsel then moved for a judgment of acquittal (in state court parlance, a required finding of not guilty). The prosecutor reiterated her objection to proceeding further and suggested that the court dismiss the case for noncompliant discovery. The trial judge promptly took the bull by the horns and interjected:

> [I]n order for the motion for required finding of not guilty to be allowed, there has to be a witness called and a witness sworn in in this matter. Otherwise there is no jeopardy that attaches and this matter would be basically dismissal without prejudice at this point. So if counsel wishes to call a witness in this matter, that's up to counsel....

Defense counsel took the hint. She immediately called the petitioner's daughter to the witness stand. Although there is no suggestion in the record that the daughter had been a percipient witness to the events underlying the criminal complaints, this lack of knowledge proved not to be an impediment. The lawyer only asked the witness to state her name and to declare whether she knew the petitioner. After the witness replied in kind,[3] the lawyers

---

**2.** *See* Mass. R.Crim. P. 15(a)(2), (b)(1) (providing an aggrieved party ten days within which to file for leave to appeal a suppression order); *Commonwealth v. Anderson*, 401 Mass. 133, 514 N.E.2d 1094, 1095 (1987) (explaining that the Commonwealth may take advantage of this rule if a motion to exclude all or most of its evidence is allowed); *see also* Mass. R.Crim. P. 15(e) ("If the trial court issues an order which is subject to the inter-

locutory procedures herein, the trial of the case shall be stayed and the defendant shall not be placed in jeopardy until interlocutory review has been waived or the period specified in [the rule] for instituting interlocutory procedures has expired.").

**3.** The daughter's complete testimony was as follows:

eschewed any additional questioning. Neither side called any further witnesses, and the petitioner renewed his motion for a required finding of not guilty. The court allowed the motion over the prosecutor's vociferous objection.

The Commonwealth sought relief from the BMC's determinations pursuant to a state statute that grants the Massachusetts Supreme Judicial Court (the SJC) "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided." Mass. Gen. Laws ch. 211, § 3. The SJC accepted the Commonwealth's application and, on July 1, 2002, vacated both the exclusion order and the judgment. *Commonwealth v. Gonzalez*, 437 Mass. 276, 771 N.E.2d 134, 136 (2002) (*Gonzalez I*). In the SJC's view, the exclusion order was erroneous because no definitive date for disclosure had been specified; defense counsel had not exercised due diligence in endeavoring to obtain the evidence; there was no indication that the prosecution had acted in bad faith; and in all events, no prejudice had been shown. *Id.* at 138. The SJC further found that the effects of this "error [were] exacerbated by the judge's lightning rush to sanction the Commonwealth, and then immediately to call the case to trial, in an effort unjustly to deprive the Commonwealth of its right to pursue an interlocutory appeal." *Id.* On the constitutional issue, the SJC concluded that "[b]ecause there was no trial on the merits and no risk of the defendant's conviction, jeopardy did not attach." *Id.* at 140. Characterizing the BMC proceeding as a "sham trial," *id.* at 142, the court vacated the judgment and remanded the case for further proceedings on the existing complaints.

Gonzalez unsuccessfully petitioned the United States Supreme Court for a writ of certiorari. *Gonzalez v. Massachusetts*, 538 U.S. 962, 123 S.Ct. 1748, 155 L.Ed.2d 514 (2003). He then repaired to the United States District Court for the District of Massachusetts. There he made three filings: a petition for a writ of habeas corpus based on an alleged double jeopardy violation, a motion to stay proceedings in the BMC, and a motion for injunctive relief pendente lite. He named as respondents the Justices of the BMC, the Massachusetts Attorney General, and the Suffolk County District Attorney (hereinafter collectively the Commonwealth). The district court issued an order temporarily blocking further prosecution of the state criminal charges. In due course, however, the court found the habeas petition wanting. *Gonzalez v. Justices of Municipal Court*, Civ.A. No. 03–10859, 2003 WL 22937727 (D.Mass. Nov.25, 2003) (*Gonzalez II*). The court discerned "no reason to quarrel" with the SJC's characterization of the original proceeding as a sham trial. *Id.* at *4. It specifically noted that there had been no presentation of evidence concerning any of the factual elements of the criminal charges and, thus, "there was no risk to the defendant that he would be found guilty." *Id.* Consequently, the district court not only refused to grant a writ of habeas corpus but also dissolved the stay that it previously had issued. *Id.* at *5.

The petitioner appealed to this court and sought a further stay of the state criminal proceedings. When the Commonwealth

---

**Atty Janulevicus:** Just state your name for the court, please.
**Camille Gonzalez:** Camille Gonzalez.
**Atty Janulevicus:** Do you know Jorge Gonzalez?

**Carmen [sic] Gonzalez:** He's my father.
**Atty Janulevicus:** Thank you. No further questions.

agreed to postpone any trial in the BMC until after the termination of this appeal, we denied the petitioner's request for a stay.[4] Briefing and oral argument followed.

## II. THE NATURE OF THE PROCEEDING

As a preliminary point, we pause to ponder a pertinent puzzle posed by the procedural posture of the present proceeding. Federal courts are courts of limited jurisdiction. In this case, the petitioner originally premised the district court's jurisdiction on a smorgasbord of statutes, including 28 U.S.C. §§ 2241 and 2254. In time, he narrowed his jurisdictional claim to section 2241 (the general habeas provision). He reasoned that section 2241 was a suitable vehicle for redressing the perceived wrongs because that provision offers habeas relief to any person who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Conversely, he viewed section 2254—section 2241's more famous relative—as inapplicable because that statute requires a state habeas petitioner to be "in custody pursuant to the judgment of a State court," *id.* § 2254(a)— a description that does not fit his circumstances. The Commonwealth took the opposite position, but the court below agreed with the petitioner on this point. *See Gonzalez II*, 2003 WL 22937727, at *3.

In this venue, the Commonwealth continues to insist that section 2254 controls the case at hand. It claims that the petitioner is "in custody pursuant to the judgment of a State court" because the SJC's reinstatement of the state criminal proceedings is the proximate cause of the petitioner's current custody. The question of which statute governs is not merely of taxonomic interest; the classification matters because, as we shall see, it influences the applicable standard of federal court review.

■ Under both section 2241 and section 2254, there is an "in custody" requirement. To be in custody for purposes of either statute, a person need not be actually incarcerated. *See Jones v. Cunningham*, 371 U.S. 236, 240, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Jackson v. Coalter*, 337 F.3d 74, 78–79 (1st Cir.2003). The requirement may be satisfied if the petitioner is subject to state-imposed "restraints not shared by the public generally." *Jones*, 371 U.S. at 240, 83 S.Ct. 373.

■ In this instance, the petitioner has been released on personal recognizance, subject to certain conditions that restrain his liberty in a way not shared by the public generally. *See* Mass. Gen. Laws ch. 276, §§ 58, 82A. He therefore meets the "in custody" requirement. *See Justices of BMC v. Lydon*, 466 U.S. 294, 300–01, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (holding that a petitioner who had been released on personal recognizance pending retrial in the court was "in custody" for purposes of federal habeas relief). Against that backdrop, we turn to the problem of identifying the nature of the instant proceeding.

■ We start with the Commonwealth's position. A fundamental purpose of section 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, § 104, 110 Stat. 1214, 1218–19 (1996), is to ensure that federal courts accord due deference to state court judgments. Here, unlike in most pretrial situations, there is a state court judgment to which the provisions of

---

4. The petitioner tells us that, on March 30, 2004, the BMC stayed all proceedings pending the resolution of this appeal. *See* Petitioner's Reply Br. at 2–3. That stay appears to moot any further federal question as to pretrial proceedings in the BMC.

section 2254 theoretically could attach. The Commonwealth argues that a textual reading of the statute supports jurisdiction in this case because "if section 2254 were intended to apply only to post-trial situations, it would refer to persons held in custody pursuant to a 'conviction' of a state court, rather than to persons held in custody pursuant to a 'judgment' of a state court." Respondents' Br. at 14.

We disagree with the Commonwealth's interpretation. In view of the plain language of the two statutory provisions, the travel of this case leads inexorably to the conclusion that section 2241 controls. The SJC judgment set aside the required finding of not guilty and reinstated the case for further proceedings before the BMC on the existing complaints. *Gonzalez I,* 437 Mass. at 285, 771 N.E.2d 134. Those further proceedings have yet to take place. As one awaiting trial on state criminal charges, the petitioner is not in custody pursuant to the SJC's judgment. Rather, he is in custody as a result of the BMC's personal recognizance order, and that is the custody which he alleges violates the Constitution. Seen in that light, his petition is squarely within the maw of section 2241.

To be sure, the BMC proceeding would be over and done with (and, thus, the recognizance order would be a dead letter) were it not for the SJC's judgment. But that is irrelevant for jurisdictional purposes. Unless we are prepared to adopt a protean rule of "but for" causation in this context—and we are not—the plain language of the statutory scheme dictates that the petitioner's case must be adjudicated within the confines of section 2241.

The case law confirms this intuition. Although we find little guidance in our own reported decisions, *see, e.g., Jackson,* 337 F.3d at 79 (raising, but not resolving, a question as to whether a pretrial detainee

was correct in filing for habeas relief under section 2254), the precedents elsewhere are uniform. Several other courts of appeals have decided, on sufficiently analogous facts, that section 2241—not section 2254—applies. *See, e.g., Jacobs v. McCaughtry,* 251 F.3d 596, 597–98 (7th Cir.2001) (per curiam); *Stringer v. Williams,* 161 F.3d 259, 261–62 (5th Cir. 1998); *Mars v. Mounts,* 895 F.2d 1348, 1351 n. 3 (11th Cir.1990). The Commonwealth does nothing to discredit, and little to counter, this impressive array of authority.

The Commonwealth's principal effort to find support in the case law revolves around the decision in *Harpster v. Ohio,* 128 F.3d 322 (6th Cir.1997). That decision, carefully read, lends no assistance to the Commonwealth's cause. The *Harpster* court simply analyzed the habeas petition before it in accordance with section 2254 without any discussion of whether that section or section 2241 actually controlled. *See id.* at 326.

To say more on this issue would be to paint the lily. We hold that jurisdiction in this case was properly premised on 28 U.S.C. § 2241.

■ As mentioned above, this determination dictates the standard of review. Prior to the enactment of the AEDPA, federal courts sitting in habeas jurisdiction typically deferred to state court findings of fact but reviewed conclusions of law de novo. *See Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Scarpa v. DuBois,* 38 F.3d 1, 9 (1st Cir.1994). Courts applied this standard of review indiscriminately to petitions brought under both sections 2241 and 2254. *See, e.g., Scarpa,* 38 F.3d at 9 (reviewing a section 2254 petition); *United States ex rel. Hall v. Illinois,* 329 F.2d 354,

356–57 (7th Cir.1964) (reviewing a section 2241 petition).

In 1996, the AEDPA ushered in a new, particularized framework for adjudicating certain habeas cases. *See* Pub.L. No. 104–132 § 104, 110 Stat. 1214, 1218–19 (1996). That mode of review is quite respectful of state court judgments. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mastracchio v. Vose*, 274 F.3d 590, 596–98 (1st Cir. 2001). Yet Congress chose to insert the new review framework in section 2254 without mentioning section 2241. *Compare* 28 U.S.C. § 2254(d)-(e) (describing the conditions under which a federal court may grant an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court"), *with id.* § 2241 (containing no descriptive conditions). The AEDPA left section 2241 unscathed and unchanged, and there are no cross-references in the new version of section 2254 to section 2241. Nor does the legislative history contain any indication of a congressional intention to apply the neoteric review standards to section 2241.

The Supreme Court recently reaffirmed the well-settled rule that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Duncan v. Walker*, 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (citations and internal quotation marks omitted). That principle militates strongly in favor of a conclusion that the AEDPA's review standards should govern only those habeas petitions cognizable under section 2254.

Despite the logic of this position, the only court of appeals that appears to have confronted the issue has, without any deliberate analysis, simply applied the AEDPA standard to section 2241 petitions. *See Powell v. Ray*, 301 F.3d 1200, 1201 (10th Cir.2002) (citing other Tenth Circuit cases), *cert. denied*, 538 U.S. 927, 123 S.Ct. 1578, 155 L.Ed.2d 321 (2003). With respect, we are inclined to believe that this approach is incorrect and that section 2241 maintains its historical posture, evoking de novo review as to state courts' conclusions of law. Thus, we proceed on the assumption that we, as a federal habeas court reviewing a petition under section 2241, must defer to the SJC's findings of fact, *see Sumner v. Mata*, 455 U.S. 591, 591–92, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam), but must undertake plenary review of that court's resolution of issues of law.[5]

## III. THE MERITS

The Double Jeopardy Clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Through the instrumentality of the Fourteenth Amendment, the prophylaxis of the Double Jeopardy Clause extends to state prosecutions. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Lydon*, 466 U.S. at 306–07, 104 S.Ct. 1805. The petitioner invoked the first of these three prongs. That safeguard "restrains the government from us-

---

5. We note that, in this case, nothing turns on this determination: we would reach the same result here even if we were to accord deference to the SJC's resolution of the federal constitutional issue.

8

ing its power and resources to subject a defendant to serial prosecutions, thus prolonging his ordeal and unfairly enhancing the prospect of his ultimate conviction." *United States v. Toribio–Lugo*, 376 F.3d 33, 38 (1st Cir.2004) (citing *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

Stripped of rhetorical flourishes, the petitioner maintains that the original BMC proceeding constituted a full trial, resulting in an acquittal; retrial would, therefore, place him twice in jeopardy for the same offenses. The Commonwealth resists this appraisal. It joins the SJC in labeling the proceeding a sham that bore none of the hallmarks of a true acquittal. Retrial would, therefore, not offend the Double Jeopardy Clause.

■ In resolving this type of dispute, the Supreme Court has implicitly endorsed a twofold inquiry. *See, e.g., Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *Lydon*, 466 U.S. at 309, 104 S.Ct. 1805. First, a reviewing court must determine whether jeopardy attached in the original state court proceeding. If it did, the court must then ask whether the state court terminated jeopardy in a way that prevents reprosecution. *See* 15B Charles A. Wright et al., Federal Practice and Procedure § 3919.5, at 637 (2d ed. 1992 & Supp.2004). Unless both of these queries generate affirmative answers, the constitutional guarantee against double jeopardy does not bar reprosecution.

■ Based on the sequence of events, it is at least arguable that the initial inquiry should be answered in the negative. The Supreme Court has described the precise moment that jeopardy attaches in a bench trial in various ways. *Compare, e.g., Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) (focusing on when the court begins to hear evi-

dence), *with, e.g., Crist v. Bretz*, 437 U.S. 28, 37 n. 15, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (focusing on when the first witness is sworn). The former phrasing—"when the court begins to hear evidence"—is the most frequently invoked. *See* 15B Federal Practice and Procedure, *supra* § 3919.6, at 700 (collecting cases); 21 Am.Jur.2d *Crim. Law* § 338 (1998 & Supp.2004) (same). Regardless of phraseology, this requirement seems to have been met in a technical or superficial sense here; prior to the entry of judgment, the petitioner's daughter took the witness stand and testified.

Here, however, treating that event as conclusive on the issue elevates form over substance. This is significant because a long line of cases teaches that jeopardy connotes risk. *See, e.g., Abney v. United States*, 431 U.S. 651, 661, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); *Price v. Georgia*, 398 U.S. 323, 329, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). No less an authority than the Supreme Court itself has decreed that "[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass*, 420 U.S. at 391–92, 95 S.Ct. 1055; *accord United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) ("The protections afforded by the [Double Jeopardy] Clause are implicated only when the accused has *actually* been placed in jeopardy." (emphasis supplied)).

What transpired before the BMC hardly can be said to have imposed any risk of conviction on the petitioner. The chronology of the proceeding indicates beyond a shadow of a doubt that the risk of a guilty finding was, as a practical matter, nonexistent. The prosecutor repeatedly refused to move for trial and apprised the court that she had no evidence with which

to mount a prosecution at that point in time. The judge, for his part, assured the petitioner, in so many words, that he (the petitioner) faced no risk of conviction. Indeed, after defense counsel made his initial request for a judgment of acquittal, the judge conducted an impromptu tutorial on what he thought were the steps necessary to ensure that the requested disposition would preclude further prosecution.

That a witness was sworn and evidence taken during the effort to tailor the proceeding to the measurements of the double jeopardy bar does not alter the reality that the petitioner was never in actual danger of conviction. Where the only evidence received does not subject a defendant to any real risk that he will be found guilty, courts sometimes have held that jeopardy does not attach. *See, e.g., Aleman v. Hon. Judges of the Circuit Court*, 138 F.3d 302, 307–09 (7th Cir.1998) (concluding that defendant who secured an acquittal by bribing the trial judge was never in jeopardy "because he was never truly at risk of conviction"); *United States v. Olson*, 751 F.2d 1126, 1128 (9th Cir.1985) (per curiam) (holding that jeopardy did not attach when trial court merely heard proffers of evidence because the court "did so without subjecting [defendant] to the risk that he would be found guilty").

This result makes eminently good sense. The rule that jeopardy attaches when the court begins to hear evidence stems partially from the knowledge that, in almost all cases, the first evidence heard will emanate from the mouth of a witness tapped by the prosecution. *See Newman v. United States*, 410 F.2d 259, 260 (D.C.Cir.1969) (per curiam); *People v. Deems*, 81 Ill.2d 384, 43 Ill.Dec. 8, 410 N.E.2d 8, 11 (Ill. 1980). This act is an affirmative step by the government into the trial—a step that places the defendant at actual risk of con-

viction. Once that step is taken, jeopardy attaches and there is no turning back.

Here, the contrast is stark. The only person sworn in the petitioner's case was a witness whom he selected and the only evidence heard was totally unrelated to any issue in the case. Consequently, we think it likely that jeopardy never attached in the BMC proceeding.

Having said this much about the attachment of jeopardy, we stop short of definitively resolving the point. Even were we to assume for argument's sake that jeopardy did attach, the petitioner would face a second hurdle. On these facts, we deem that hurdle insurmountable. We explain briefly.

"[T]he conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Serfass*, 420 U.S. at 390, 95 S.Ct. 1055 (quoting *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)). To succeed on a double jeopardy challenge, the defendant also must show that the court in the original proceeding terminated jeopardy in a way that makes retrial constitutionally impermissible. *See Richardson*, 468 U.S. at 325, 104 S.Ct. 3081; *Lydon*, 466 U.S. at 309, 104 S.Ct. 1805. That requirement is not satisfied here.

Although it is settled beyond serious question that an acquittal bars further prosecution of a defendant for the same offense, it is not always apparent what judicial action constitutes an acquittal for this purpose. *See* 15B Federal Practice and Procedure, *supra* § 3919.5, at 637. We do know, however, that the word "acquittal," in and of itself, enjoys no talismanic significance. *Serfass*, 420 U.S. at 392, 95 S.Ct. 1055. An acquittal involves "a legal determination on the basis of facts adduced at the trial relating to the general issue of the case." *United States v. Sis-*

*son,* 399 U.S. 267, 290 n. 19, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). The appropriate inquiry is functional, not semantic. Thus, an inquiring court is duty bound to ascertain "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen Supply,* 430 U.S. at 571, 97 S.Ct. 1349; *accord United States v. Scott,* 437 U.S. 82, 97, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).

In this instance, an examination of the record discloses that the BMC proceeding did not end in an acquittal, as that word has been defined by the Supreme Court. As said, the lone witness called was the petitioner's daughter. There is no basis for suggesting that she possessed any information relevant to the pending criminal charges. *See Gonzalez II,* 2003 WL 22937727, at *2 n. 1. Her testimony spoke neither to the factual elements of the offenses charged nor to the general issue of the case. By the same token, the trial judge disposed of the case on a basis wholly unrelated to the petitioner's factual guilt or innocence. Thus, despite the nomenclature that the judge employed the proceeding was merely an artifice designed to dress a dismissal without prejudice in a raiment more protective of a possible double jeopardy defense. That sort of masquerade, perpetrated by the judge's incantation of a few magic words,[6] cannot suffice to transmogrify an ordinary trial vicissitude into an injury cognizable under the Double Jeopardy Clause.

Most judges play by the rules and, fortunately, manipulation of this sort is a rare occurrence. Cases on point are, therefore, hard to find. We have, however, located a string of decisions in the Illinois state courts that conclude, on analogous facts, that such a mislabeled "acquittal" is not an acquittal at all for double jeopardy purposes. *See, e.g., People v. Rudi,* 103 Ill.2d 216, 82 Ill.Dec. 936, 469 N.E.2d 580, 583–84 (1984) (discerning no double jeopardy bar when the prosecution had refused to present evidence after its request for a continuance had been denied, the defendant was sworn, and the judge entered a finding of not guilty without taking any testimony); *Deems,* 43 Ill.Dec. 8, 410 N.E.2d at 10–11 (similar); *People v. Verstat,* 112 Ill.App.3d 90, 67 Ill.Dec. 691, 444 N.E.2d 1374, 1380 (1983) (deciding that acquittals amounted to appealable dismissals when the trial judge denied the prosecution's requests for continuance, swore in the defendants, asked only their names and addresses, and found them not guilty); *People v. Edwards,* 97 Ill.App.3d 407, 52 Ill.Dec. 908, 422 N.E.2d 1117, 1119–20 (1981) (similar).

In an effort to blunt the force of this reasoning, the petitioner directs our attention to the Fourth Circuit's decision in *Goolsby v. Hutto,* 691 F.2d 199 (4th Cir. 1982). While that panel did find a double jeopardy violation on similar facts, *see id.* at 202, the decision makes no attempt to determine "whether the ruling of the judge, whatever its label, actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen Supply,* 430 U.S. at 571, 97 S.Ct. 1349. Without any such inquiry, we do not find *Goolsby* persuasive.[7]

---

6. We do not think that this overstates the case. In objecting to the calling of a witness to the stand, the prosecutor cautioned: "It's not a trial at this point, Your Honor." The judge responded: "Yes, it is because I'm saying it is."

7. Nor do we find persuasive the decision in *People v. Brower,* 164 Mich.App. 242, 416 N.W.2d 397, 399 (1987), which relies on *Goolsby* to reach the same conclusion.

The petitioner also seeks shelter under the umbrella of *Fong Foo v. U.S. Standard Coil Prods. Co.*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (per curiam). In that case, the Justices ruled that directed verdicts of acquittal entered by a trial judge after seven days of testimony were final and, even though those acquittals were "based upon an egregiously erroneous foundation," could not be reviewed without putting the defendants twice in jeopardy. *Id.* at 143, 82 S.Ct. 671. The petitioner asseverates that, on the logic of *Fong Foo,* we should refrain from punishing him for any errors committed by the trial judge in entering the judgment of acquittal. This asseveration misperceives the nature of the problem in this case.

*Fong Foo* is merely one iteration of a well-established rule. The law is pellucid that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). Here, however, our determination that the BMC proceeding did not end in an acquittal for double jeopardy purposes is not premised on a finding that the trial judge erred in his assessment of either the evidence adduced at trial or the law applicable to that evidence. Rather, we conclude that the so-called acquittal entered by the trial judge was not an acquittal at all because it did not actually represent a resolution—correct or incorrect—of some or all of the factual elements of the offenses charged. *See Martin Linen Supply*, 430 U.S. at 571, 97 S.Ct. 1349.

The sockdolager is that the interests protected by the Double Jeopardy Clause would not be advanced by barring further prosecution here. The core purpose of the Clause is to guard against a tyrannical state run amok. *See Scott*, 437 U.S. at 96, 98 S.Ct. 2187; *Green*, 355 U.S. at 187–88, 78 S.Ct. 221. Far from being an instance of despotic state conduct, this is a tale of human frailty. The protagonists include a prosecutor who clumsily tried to throw in the towel before jeopardy attached; a skillful defense lawyer who spied an opportunity to manufacture an artificial acquittal; and a rogue judge who attempted to reshape the reality of events. A ruling in the petitioner's favor would require us to pay obeisance to the very type of rigid, mechanical rule that the Supreme Court consistently has disparaged in its double jeopardy jurisprudence. *See, e.g., Serfass*, 420 U.S. at 390, 95 S.Ct. 1055; *Somerville*, 410 U.S. at 467, 93 S.Ct. 1066. The public has an important interest "in fair trials designed to end in just judgments." *United States v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality op.) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)). Treating the ersatz acquittal here as an acquittal in fact would offend that interest. We therefore hold that the Double Jeopardy Clause does not bar the petitioner's retrial on the existing complaints.[8]

A coda is in order. The petitioner maintains that, at the point he waived his right to trial by jury, he acquired a "right to have his trial completed by a particular tribunal." *Wade*, 336 U.S. at 689, 69 S.Ct. 834. In his view, it follows that, if his case is to be retried at all, it must be assigned to the same judge.

■ The Commonwealth's first line of defense is a claim that a certificate of

<hr/>

8. In so holding, we note, but do not resolve, the petitioner's argument that the Commonwealth should be collaterally estopped from relitigating certain issues already decided during the probation surrender hearing. That argument must be adjudicated, in the first instance, in the state court proceedings. It is not properly before us on this appeal.

appealability is required as a precondition to pressing this issue on appeal. That contention is baseless. Where, as here, a habeas petition is governed by section 2241, a certificate of appealability is not essential. *See Drax v. Reno*, 338 F.3d 98, 106 n. 12 (2d Cir.2003); *United States v. Barrett*, 178 F.3d 34, 42 (1st Cir.1999); *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 810 n. 1 (10th Cir.1997).

Despite having overcome this procedural obstacle, the petitioner's argument fails. At bottom, the petitioner misunderstands the right to have one's trial completed by a particular tribunal. To the extent that such a right is recognized, it only safeguards a defendant's interest in having a particular judge or jury see his case through to an initial conclusion once jeopardy has attached. It is not meant to give the defendant a protected interest in having the same judge or jury arrive at a *second* conclusion in a subsequent proceeding once the initial proceeding has terminated in a way that does not implicate double jeopardy concerns. *Cf. Crist*, 437 U.S. at 36, 98 S.Ct. 2156 ("Regardless of its historic origin ... the defendant's 'valued right to have his trial completed by a particular tribunal' is now within the protection of the constitutional guarantee against double jeopardy ...." (quoting *Wade*, 336 U.S. at 689, 69 S.Ct. 834)).

In all events, the right to have one's factual guilt or innocence adjudged by a particular factfinder is not absolute, and it "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade*, 336 U.S. at 689, 69 S.Ct. 834. The peti-

tioner here is no more entitled to be retried by the same judge than a defendant would be entitled to the reconvening of the same jury following the declaration of a mistrial.[9]

## IV. CONCLUSION

We need go no further. We adjudicate this petition under 28 U.S.C. § 2241. Doing so, we conclude that a trial on the existing criminal complaints will not compromise the petitioner's right not to be twice put in jeopardy. Accordingly, we affirm the district court's dismissal of the application for federal habeas relief.

*Affirmed.*

---

9. Withal, the petitioner is entitled to a fresh opportunity to decide whether he wishes to waive his right to trial by jury—an opportunity cabined only by the scope of his initial waiver. *See Fitzgerald v. Withrow*, 292 F.3d

500, 503 (6th Cir.) (citing cases), *cert. denied*, 537 U.S. 1009, 123 S.Ct. 501, 154 L.Ed.2d 409 (2002); *United States v. Lutz*, 420 F.2d 414, 416 (3d Cir.1970) (per curiam).